UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DONOR NETWORK WEST, a non-profit corporation,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>Nevada Donor Network, Inc., a non-profit corporation,<br><br>　　　　　Defendant. | Case No. 3:23-cv-00632-ART-CSD<br><br>ORDER |

Plaintiff Donor Network West ("DNW") brings this action against Defendant Nevada Donor Network, Inc ("NDN"), alleging claims for Intentional Interference with Contractual Relations, Intentional Interference with Prospective Economic Advantage, and violations of the Nevada Deceptive Trade Practices Act and Nevada Unfair Trade Practices Act. Plaintiff DNW's claims are premised on allegations that Defendant NDN illegally interfered with their affiliation agreement with Renown Health ("Renown"). Before the Court are Plaintiff's motion for a temporary restraining order and preliminary injunction (ECF No. 2) and Defendant's motion to dismiss (ECF No. 30.)

**I.　FACTS**

Plaintiff DNW and Defendant NDN are both organ procurement organizations ("OPOs") which operate in Nevada. (ECF No. 28 at 2.) Under federal regulations, OPOs are required to serve a Designated Service Area ("DSA"). Medicaid and Medicare participating hospitals within that DSA are required to have an exclusive agreement with the OPO designated to serve that DSA, unless the U.S. Centers for Medicare & Medicaid Services ("CMS") grants the hospital a waiver to use a different OPO. 42 U.S.C. § 1320b-8(a)(1)(C); 42 CFR § 486.308(a). (*Id.* at 8.) Plaintiff DNW is the designated OPO for Reno and the surrounding area.

(*Id.* at 2.) Defendant NDN is the designated OPO for hospitals located in southern Nevada. (*Id.*) As the OPO for the northern Nevada DSA, Plaintiff DNW has an affiliation agreement with Renown to provide organ procurement services to its hospitals in this area. (*Id.* at 4.) However, in September 2023, Renown applied to obtain a waiver from CMS to use NDN as their OPO instead of DNW, and notified DNW of an intent to cancel their affiliation agreement. (*Id.* at 20.)

Plaintiff alleges that Defendant NDN took several actions to induce Renown to terminate the affiliation agreement with DNW by seeking a waiver through CMS to name NDN its new OPO. Specific allegations include the following: NDN Created a "take it north" campaign, intending to become the only OPO in Nevada. (*Id.* at 12.) NDN entered into an MOU with Renown to provide Renown $6 million to build a new National Transplant Institute at Renown, which is illegal under state and federal anti-kickback statutes (42 U.S.C. § 1320a-7b; NRS 422.560). (*Id.* at 13, 30). NDN misrepresented to Renown that NDN could work on organ transplant operations, which an OPO is not permitted to do under federal regulations. (*Id.* at 13). NDN misrepresented its status and ability to perform organ procurement in northern Nevada to numerous hospitals, including Renown, while it is not the OPO for that DSA. (*Id.* at 13, 25.) At a meeting in August 2023, NDN misrepresented, contrary to available data showing that DNW outperforms NDN, that they are more qualified and successful than DNW, and that affiliating with them would increase organ transplants. (*Id.* at 19, 23-24.) At an international organ donation conference in October 2023, NDN's CEO falsely represented that NDN was the sole Nevada OPO. (*Id.* at 27.) NDN falsely told several hospitals that continuing to work with DNW would violate Medicare. (*Id.* at 26.)

Plaintiff alleges that NDN's conduct has disrupted DNW's ability to perform under the affiliation agreement with Renown. DNW alleges that NDN's misrepresentations have caused confusion with DNW and Renown staff and the

organ donation community, as well as cancellation of necessary meetings with Renown to coordinate services. (*Id.* at 3, 21-22, 25, 33, 35.) DNW also alleges that it has had to dedicate substantial resources to protecting its rights and quelling such confusion, making it more expensive for them to perform under the affiliation agreement. (*Id.* at 30-31.)

On December 8, 2023, Plaintiff filed a complaint (ECF No. 1) and motion for temporary restraining order and preliminary injunction (ECF No. 2.) Plaintiff then filed a first amended complaint on January 16, 2024 (ECF No. 28.) Defendant filed a motion to dismiss (ECF No. 30) on January 30, 2024. Plaintiff filed a response (ECF No. 37) on February 13, 2024, and Defendant filed a reply (ECF No. 39) on February 20, 2024.

## II.   Plaintiff's Motion for Injunctive Relief

Plaintiff's motion for a temporary restraining order and preliminary injunction, filed with Plaintiff's original complaint, requested injunctive relief against both Renown and Defendant NDN. (ECF No. 2.) Because Plaintiff subsequently filed a first amended complaint (ECF No. 28) which does not request a temporary restraining order or preliminary injunction, the Court denies Plaintiff's motion for temporary restraining order and preliminary injunction as moot, without prejudice.

## III.   Defendant's Motion to Dismiss

Defendant's motion to dismiss argues that all four claims brought by Plaintiff should be dismissed under Fed. R. Civ. P. 12(b)(6).

### A. Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it

demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Under this standard, a district court must accept as true all well-pleaded factual allegations in the complaint and determine whether those factual allegations state a plausible claim for relief. *Id.* at 678-79.

## B. ANALYSIS

### 1. Intentional Interference with Contractual Relations

A claim for intentional interference with contractual relations exists when (1) there is a valid and existing contract; (2) defendant has knowledge of the contract; (3) defendant's acts are intentional and intended or designed to disrupt the contractual relationship; (4) actual breach or disruption of the contract occurs; and (5) plaintiff is harmed by the disruption or breach. *Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989); *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).

Here, Plaintiff has alleged sufficient facts to state a claim for intentional interference with contractual relations. First, Plaintiff states that at all relevant times, DNW maintained an affiliation agreement with Renown. (ECF No. 28 at 29.) Second, Plaintiff alleges that Defendant NDN had knowledge of this affiliation agreement, as they were "well-versed in federal regulations regarding OPO-hospital relationships in respective DSAs" and were thus aware that DNW was the designated OPO for Renown. (*Id.*)

Third, Plaintiff alleges that Defendant NDN intentionally induced Renown to terminate the affiliation agreement between Renown and Plaintiff DNW via an illegal promise of $6 million to form the new Nevada Transplant Institute program

4

at Renown, and through several misrepresentations regarding both DNW and NDN. (*Id.* at 13, 19, 23-27, 30.) Along with the specific allegation that the MOU violates anti-kickback statutes, Plaintiff alleges many specific instances of harmful misrepresentations. (*Id.* at 13, 19, 23-27.) Drawing all inferences in the light most favorable to Plaintiff, it is plausible that these alleged actions were intended by NDN to disrupt the affiliation agreement between Plaintiff DNW and Renown.

Fourth, Plaintiff DNW alleges that an actual and significant disruption of the agreement with Renown occurred. While at the time of pleadings, the affiliation agreement between Plaintiff DNW and Renown had not actually been terminated, DNW alleges that NDN's actions caused dedication of substantial resources to protect its rights and quell confusion, as well as cancellation of necessary meetings between DNW and Renown, making it more expensive for them to perform under the affiliation agreement. (*Id.* at 3, 21-22, 25, 30-35.) Allegations of increased cost of performance of contractual duties can be sufficient to allege an actual disruption of a contract. *See Rimini St., Inc. v. Oracle Int'l Corp.*, No. 2:14-CV-1699-LRH-CWH, 2017 WL 5158658, at *6 (D. Nev. Nov. 7, 2017) (finding that expenditures to investigate and eliminate confusion caused by misrepresentations were sufficient to allege actual disruption); *see also Chocolate Magic Las Vegas LLC v. Ford*, 337 F. Supp. 3d 950, 961 (D. Nev. 2018) (finding costly re-assignments and efforts to quell employee confusion caused by defendant's interference sufficient to allege disruption).

Fifth, Plaintiff has sufficiently pleaded damages. DNW has alleged that they have suffered economic harm, costs of mitigation, loss of goodwill and injury to reputation, as well as other damages. (ECF No. 28 at 31.)

Additionally, if an action for intentional interference of contractual relations is based upon the termination of an at-will contract, then the interference must have been done maliciously or by improper means. *Rimini St.,*

2017 WL 5158658, at *7. The parties dispute whether the affiliation agreement was in fact terminable at-will. However, even if the agreement was terminable at-will, Plaintiff has alleged sufficient facts to demonstrate that NDN's alleged conduct was improper. DNW alleges that NDN's conduct violated state and federal anti-kickback statutes and consisted of several misrepresentations about both DNW's performance and NDN's own status, both of which constitute improper conduct. *See id.* at *7 (finding that intentional misrepresentations by defendant were unjustified).

### 2. Intentional Interference with Prospective Economic Advantage

To state a claim for intentional interference with prospective economic advantage, a plaintiff must allege the following: (1) the existence of a prospective contractual relationship between themselves and a third party, (2) knowledge of this prospective relationship by the defendant, (3) intent to harm the plaintiff by preventing or interfering with the prospective contractual relationship, (4) the absence of privilege or justification by the defendant, and (5) actual harm to the plaintiff. *Id.* at *8 (D. Nev. Nov. 7, 2017) (citing *Leavitt v. Leisure Sports, Inc.*, 734 P.2d 1221, 1225 (Nev. 1987)). The only significant difference between the elements of a claim for intentional interference with contractual relations and intentional interference with prospective economic advantage is the requirement that a plaintiff prove the absence of privilege or justification by the defendant. *Rimini St. v. Oracle Int'l Corp.*, 473 F. Supp. 3d 1158, 1186 (D. Nev. 2020). Privilege can exist if a defendant acted to protect its own interests, but activity is not privileged or justified if a defendant "resort[ed]... to unlawful or improper means." *Allstate Ins. Co. v. Shah*, No. 215-CV-01786-APG-DJA, 2023 WL 5613493, at *5 (D. Nev. July 17, 2023) (citations omitted).

Plaintiff has alleged sufficient facts to constitute a claim intentional interference with prospective economic advantage. First, Plaintiff alleges that they have prospective relationships with Renown, all hospitals in the DSA in northern

6

1  Nevada, and DNW staff. (ECF No. 28 at 31-32.) Second, Plaintiff alleges that NDN
2  knew about these prospective relationships because they contacted hospitals to
3  attempt to convince them to terminate their agreements with DNW. (*Id.* at 32.)
4  Third, Plaintiff alleges that NDN intentionally interfered with these relationships
5  by making false and misleading statements designed to cause confusion and
6  disrupt these ongoing and prospective relationships. (*Id.* at 32-33.) Plaintiff cites
7  NDN's "take it north" campaign as a further demonstration of NDN's intent. (*Id.*
8  at 12; ECF No. 37 at 16.) Fourth, because Plaintiff alleges that NDN's actions
9  included misrepresentations, they have sufficiently alleged that NDN used
10 improper means, and thus that NDN's actions were not privileged. (ECF No. 28
11 at 32-33.) Fifth, Plaintiff alleges that NDN's misrepresentations have caused them
12 to suffer economic harm, costs of mitigation, loss of goodwill and injury to
13 reputation, as well as other damages. (*Id.* at 33.)

14 Defendant argues that Plaintiff's claim fails because they failed to name
15 specific prospective contractual relationships. (ECF No. 39 at 6.) However, this
16 argument has previously been rejected. *See Shah*, 2023 WL 5613493, at *5. While
17 a plaintiff pleading a claim for intentional interference with prospective economic
18 advantage must identify a particular relationship that was interfered with, it is
19 sufficient that Plaintiff identified a "class of customers" (hospitals in the DSA in
20 northern Nevada) with whom NDN's conduct interfered. *Id.* (citing *In re Amerco*
21 *Derivative Litig.*, 252 P.3d 681, 702-703 (Nev. 2011) (en banc).

22 Plaintiff has adequately stated a claim for intentional interference with
23 prospective economic advantage. Thus, Defendant's motion to dismiss this claim
24 is denied.

25 **3. Violation of Nevada Deceptive Trade Practices Act**

26 A valid claim under NRS 41.600(1), the Nevada Deceptive Trade Practices
27 Act ("NDTPA") requires "that (1) an act of consumer fraud by the defendant (2)
28 caused (3) damage to the plaintiff." *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651,

7

658 (D. Nev. 2009). Plaintiff's complaint alleges violations of the NDTPA under both NRS 598.0923 and NRS 598.0915(8), which are addressed in turn.

### a. Applicability of Rule 9(c).

As a preliminary matter, Plaintiff and Defendant dispute whether both of Plaintiff's claims under the NDTPA must meet the heightened pleading standards under Fed. R. Civ. P. 9(c), which requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(c). Defendant argues that all cases brought under the NDTPA are subject to Rule 9(c), citing *Allstate Ins. Co. v. Belsky*, No. 215-CV-02265-MMD-CWH, 2017 WL 7199651 (D. Nev. Mar. 31, 2017) ("Consumer fraud claims brought under this statute are subject to Rule 9(b)'s heightened pleading requirements." (citing *Brown v. Kellar*, 636 P.2d 874, 874 (Nev. 1981))). Plaintiff counters that Rule 9(c) applies only to NDTPA claims based on misrepresentations, citing *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1199-1200 (D. Nev. 2022) (applying Rule 9(c) to claims under 598.0923(1)(b), which defines the failure to disclose a material fact in a transaction as a deceptive trade practice, but seemingly not applying Rule 9(c) to claims under 598.0923(1)(c)), which defines violation of state or federal law relating to the sale or lease of goods or services as a deceptive trade practice).

Regardless of whether Rule 9(c) does apply to all of Plaintiff's claims under the NDTPA, Plaintiff's complaint meets the pleading requirements of Rule 9(c) for all NDTPA claims.

### a. Violation of NRS 598.0923(1)(c)-(d)

Under NRS 598.0923(1)(c), a person engages in a deceptive trade practice when they knowingly violate a state or federal statute or regulation relating to the sale or lease of goods or services. Under NRS 598.0923(1)(d), a person engages in a deceptive trade practice when they use coercion, duress or intimidation in a transaction.

Plaintiff DNW alleges that Defendant NDN violated state and federal anti-

8

kickback laws (42 U.S.C. 1320a-7b(b)) and NRS 422.560) when they induced Renown to terminate their affiliation agreement with DNW and seek a waiver to name NDN their new OPO by promising $6 million in funding for the new Nevada Transplant Institute. (ECF No. 28 at 34-35). Plaintiff alleges that this inducement caused Renown to notice termination of the agreement with DNW and seek a waiver to affiliate with NDN instead. (*Id.*) Plaintiff alleged the specific timing and circumstances of each factual allegation, sufficiently alleging the "who, what, when, where, and how" of the fraudulent misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); (ECF No. 28 at 13, 22.) Plaintiff has thus made these allegations with sufficient particularity to meet the requirements of Rule 9(c).

### b. Violation of NRS 598.0915(8)

Under NRS 598.0915(8), a person engages in a deceptive trade practice when they "knowingly disparage the services or business of another by false or misleading representation of fact." Plaintiff alleges that, among other actions, Defendant made specific false and misleading statements regarding DNW's performance to community members, and falsely represented that NDN would be replacing DNW as Renown's OPO for the DSA in northern Nevada. (ECF No. 28 at 23-24, 26.) Plaintiff specified the timing and circumstances of both alleged events. (*Id.*) Thus, Plaintiff pleaded the alleged conduct with sufficient particularity under Rule 9(c).

As with its other claims, Plaintiff alleges that the above actions by Defendant NDN caused economic harm, costs of mitigation, loss of goodwill and injury to reputation, as well as other damages. (*Id.* at 35). Because Plaintiff has sufficiently plead that (1) an act of consumer fraud by the defendant (2) caused (3) damages to the plaintiff, Defendant's motion to dismiss Plaintiff's NDTPA claims under NRS 598.0923(1)(c)-(d) and NRS 598.0915(8) is denied.

//

### 4. Violation of Nevada Unfair Trade Practices Act

Plaintiff alleges that Defendant's actions violated the Nevada Unfair Trade Practices Act ("NUPTA") by attempting to monopolize trade or commerce in Nevada under NRS 598A.060(1)(e). (ECF No. 28 at 36.) In their motion to dismiss, Defendant argues that Plaintiff's claims under NUPTA are barred because (1) NUPTA does not apply to conduct which is expressly authorized, regulated or approved by a state or federal statute or administrative agency under NRS 598A.040(3) and (2) the implied immunity doctrine shields Defendant's conduct from antitrust suit because there is an alternative regulatory scheme which impliedly repeals antitrust laws. (ECF No. 30 at 15-18.)

Plaintiff failed to address either of these arguments in their response (ECF No. 37.) Local Rule 7-2(d) provides that "failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion." LR 7-2(d). As Defendant correctly points out, the Court may apply LR 7-2(d) to dismiss a claim when a party fails to respond to an argument in their opposition brief. *See Kearns v. Comba*, No. CV-N-03-0207-LRH-RAM, 2005 WL 8165235, at *2 (D. Nev. Sept. 27, 2005). Accordingly, the Court dismisses Plaintiff's cause of action under NUPTA pursuant to LR 7-2(d).

### 5. Punitive Damages

Defendant also asserts that Plaintiff has failed as a matter of law to allege facts supporting an award of punitive damages. (ECF No. 30 at 23-24.) Under Nevada law, punitive damages are available "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied . . ." NRS 42.005. At the motion to dismiss stage, Plaintiff only need state the "bare minimum" of facts that could plausibly give rise to punitive damages. *Lewenz v. State Farm Ins. Co.*, No. 220-CV-01994-KJD-EJY, 2021 WL 4341940, at *2 (D. Nev. Sept. 22, 2021). Plaintiff has at the least alleged several factual instances of fraud in their complaint. Furthermore, dismissal of a

request for punitive damages would be premature at the motion to dismiss stage. *See AC Media Grp., LLC v. Sprocket Media, Inc.*, No. 216-CV-02145-APG-GWF, 2017 WL 1458198, at *4 (D. Nev. Apr. 24, 2017). Thus, Defendant's motion to dismiss Plaintiff's request for punitive damages is denied.

**IV.  Conclusion**

For the foregoing reasons, the Court DENIES Plaintiff's motion for a temporary restraining order and preliminary injunction as moot, without prejudice (ECF No. 2.)

The Court GRANTS in part and DENIES in part Defendant's motion to dismiss (ECF No. 30.) Defendant's motion to dismiss is granted as to Plaintiff's claim under the Nevada Unfair Trade Practices Act and is denied as to Plaintiff's claims of Intentional Interference with Contractual Relations, Intentional Interference with Prospective Economic Advantage, violations of the Nevada Deceptive Trade Practices Act, and Plaintiff's request for punitive damages.

DATED THIS 9th day of September, 2024.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE